WILLIAM H. JAMES *vs.* NORTHERN PACIFIC RAILROAD COMPANY.

May 12, 1891.

Railway—Evidence to Prove Rule.—The mere supposition or "general understanding" of its employes is not competent evidence of the existence of a rule of a railway company.

Same—Notice of Defect in Rail—Evidence.—Notice to a railway company that cars on passing over a certain place in its track had a "jumping" or "jarring" motion would not tend to prove notice to it of a latent internal seam in a rail at that place which subsequently caused the rail to split and break, there being no evidence that the uneven motion of the cars was caused by, or even suggestive of, the latent defect in the rail.

Master and Servant—Contributory Negligence.—The mere fact that a switchman, when injured by the derailing of a switch-engine, was riding on the front instead of the rear foot-board of the engine, is no evidence of contributory negligence.

Appeal by defendant from an order of the district court for St. Louis county, *Ensign*, J., presiding, refusing a new trial after verdict of $750 for plaintiff.

*John C. Bullitt, Jr.*, and *Hollembaek & Wood*, for appellant.

*Edson & Hanks*, for respondent.

MITCHELL, J. While the plaintiff, a servant of the defendant, was, in the course of his employment, riding on the front foot-board of a switch-engine, the engine was derailed by a broken rail, causing the injuries complained of. Two acts of negligence are alleged against defendant: *First*, running the engine at an unsafe rate of speed; *second*, using a defective rail on its track. For the purpose of establishing the first charge of negligence, the plaintiff introduced evidence tending to prove that the engine was being run at the rate of about 20 miles per hour, and then attempted to prove that the defendant had a rule in force that its employes, when switching, should not run at a rate of speed exceeding 6 miles per hour. For this purpose the plaintiff was allowed, against the objection and exception of defendant, to introduce evidence to the effect that it was the "general understanding" among defendant's employes that they were not to run over 6 miles an hour while doing switching, and that they supposed such to be the rule of the company. We do not now see how such a rule, if it existed, would tend to prove that running this engine at a greater rate of speed constituted a breach of duty or negligence on part of defendant towards plaintiff. Such a rule might, for anything that appears, be made for purposes entirely foreign to that of the safety of switchmen while riding on moving cars or engines. But, as appellant does not make this point, we have no occasion to decide it. Assuming that it was competent to prove the existence of such a rule, it can require no argument to show that the mere supposition or "general understanding" of defendant's employes was not competent evidence of the fact. It is equally self-evident that the testimony of a witness as to what one of defendant's engineers said the defendant's superintendent told him as to the rule was mere hearsay.

It was an undisputed fact that the rail which broke was inherently defective when manufactured, having an internal seam or fissure (probably the result of imperfect welding) about four feet long, and

running lengthwise of the rail. It was undoubtedly this defect which caused the rail to break at this point, and a part of it to split off, as the switch-engine ran over it. It appeared that the defendant had at this yard a regular inspector of its tracks, whose duty it was to examine them and see that they were in good order, and, if not, to repair them. But as an additional precaution the company had a rule that when any unusual defect in the track was observed by the trainmen, the engineer should stop and examine into the cause, and, if unsafe, the conductor should notify the sectionman in charge. The plaintiff was permitted, against defendant's objection and exception, to prove by trainmen, and particularly by one Pettibone, that on certain occasions prior to this accident, when they were running over this point, they felt a "jumping" or "jarring" as if "the curve was out of line," or "the track had heaved," or "something was wrong with it;" that the engineer in charge of the train knew of this, but did not stop, or give any notice of the defect to the yard-master or the sectionman in charge. The professed object of this evidence was to show that the defendant, through its servants, had notice of the defective condition of the track, but that they negligently failed to report the fact, as required by the rules of the company. Whether, under the facts, notice of the defect by these trainmen would have been notice to the company, or whether the company would be liable to plaintiff for the negligence of the trainmen in failing to report defects, as required by the rule referred to, are questions not covered by any exception or assignment of error, and hence are not before us. But there is a reason why this evidence should not have been admitted in any view of the case. The only defect in the track charged to the negligence of the defendant was this defective rail; therefore evidence of some other and independent defect was not admissible under the pleadings, and there is not a particle of evidence that this "jarring" or "jumping" of passing cars was caused by or in any manner suggestive of the internal seam or fissure in this rail. Indeed, it would seem to require only the most elementary knowledge of the properties of steel to know that this defect would first develop itself in the breaking of the rail, and that the "jarring" or "jumping" referred to must have been caused by some other and independent

defect in the track.   The effect of admitting such evidence was to allow proof of acts of negligence not alleged in the complaint.

For these errors in the admission of evidence a new trial must be granted.

With reference to another trial, we may add that there was no error in the court instructing the jury that there was no evidence of contributory negligence on part of the plaintiff.   The only fact upon which defendant bases its contention to the contrary is that plaintiff was riding on the front foot-board of the engine instead of the rear one.   Both foot-boards were for the express purpose of switchmen riding upon them, and no reason is suggested why it was not just as proper for the plaintiff to ride on one as on the other.   It may be true that in this particular instance, if he had been riding on the rear foot-board, he would not have been injured; but there was no reason to anticipate any more danger in riding on the one than on the other.   Had he been riding on the rear foot-board, and there injured by some other form of accident, then, by the same process of reasoning, the defendant might have claimed that plaintiff was negligent in not riding on the front foot-board.

Order reversed.