## Stoughton *v.* Manufact'rs Nat. Gas Co., Appellant.

*Negligence—Gas—Explosion.*

Plaintiff's house among others was supplied with natural gas by defendant, a gas company.  Upon their line the gas company had placed a regulator, to reduce to a point of safety the pressure of the gas in the houses supplied.  The action of the regulator was liable to be affected by cold, and to counteract this a small gas jet was allowed to burn just under the regulator.  The theory of plaintiff was that this gas jet had caused the joints where the regulator was attached to the line to open so as to permit the escape of gas therefrom; and that this gas taking fire had increased the heat until the regulator was destroyed; and the gas, liberated from restraint, had rushed into the plaintiff's house with more force than his plumbing could withstand, and taking fire had consumed the house.  *Held,* that the question of defendant's negligence was for the jury.

*Contributory negligence—Sudden peril—Question for jury.*

In the above case, plaintiff, becoming aware of the presence of an unusual quantity and pressure of gas, went down into his cellar to turn it off at his furnace.  The pressure was too strong to be controlled by the cut-off at the furnace, but as he stood by the furnace he was within three

feet of the cut-off at the outer wall of the cellar, and only had to raise his arm and turn the valve in order to control the gas. This he did not do. Plaintiff sought to explain his failure to use the means of protection within his reach, by alleging that his situation was one of great danger, and that the excitement occasioned by it, and by the warning of his wife, led him to rush from the cellar without an instant's delay. The neighboring houses were saved by the use of the cut-off. *Held,* that the question as to plaintiff's contributory negligence was for the jury.

Argued Oct. 25, 1893. Appeal, No. 106, Oct. T., 1893, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1891, No. 629, on verdict for plaintiff, W. R. Stoughton, in part for use insurance companies. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and THOMPSON, JJ.

Trespass for burning plaintiff's dwelling house.

At the trial it appeared that plaintiff was the owner of a house in " The Arlington Camp-meeting Grounds," and that his house, along with others in the grounds, was supplied with natural gas by defendant company. The company had placed a regulator upon their line to reduce the pressure of the gas in the houses to a point of safety. The action of the regulator was liable to be affected by cold, and to counteract this a small gas jet was allowed to burn just under the regulator. The regulator was about five hundred feet from plaintiff's house, and was covered by a heavy box. Plaintiff's theory was that the gas jet loosened the joints where the regulator was attached to the line, so as to permit the escape of gas ; and that this gas. taking fire had increased the heat until the regulator was destroyed ; and that the gas, liberated from restraint, had rushed into plaintiff's house with more force than his plumbing could withstand, and taking fire had consumed the house. When plaintiff became aware of the unusual quantity and pressure of gas, he went into the cellar to turn the gas off at the furnace. The pressure, however, was too strong to be controlled by. the cut-off of the furnace, but as he stood by the furnace he was within three feet of the cut-off at the outer wall of the basement and had only to raise his arm and turn the valve in order to control the gas. This he did not do. Plaintiff testified. that his situation was one of great danger, and that the excitement

occasioned by it, and the warning of his wife, led him to rush from the cellar without an instant's delay. The neighboring houses were saved by the use of the cut-off at the wall.

The court charged in part as follows, by COLLIER, J.

" The first question for you to determine is, whether as to that regulator the company were negligent in their conduct. It is admitted that this regulator was placed there to regulate the flow of gas to these houses in the little village of Arlington. It is admitted that they had a high pressure line there, and I think also a low pressure line; at any rate, it is admitted that there was a high pressure line. They placed this regulator there. That was all proper, for the very simple reason, as you all know who use gas, that when the cold weather comes we do not get gas and then we complain. Hence it was proper and important to place the regulator there. They placed it there, and they placed a gas jet under this valve for the purpose of keeping the regulator warm, so that when it got cold people would still get gas and would not have these sudden stoppages of gas which have been so frequent lately. It is alleged that that was not a prudent and proper thing to do, that there was negligence in that. It is alleged that under such circumstances, and the position in which it was placed, there would likely be escaping gas, and that, in addition, the flame would add to that and would heat up or burn up the flange of the regulator, open this gum diaphragm and let suddenly a rush of gas into the houses. The plaintiff claims that was done in this case, and that it was not a careful or prudent thing to do, and that it constituted negligence and caused this injury.

" Now, that is the allegation. [If that was not a proper and a careful thing to do, under all those circumstances, then you would find negligence on the part of the defendant, and you would have a right to so find.] [8] But if it was a prudent thing to do under all the circumstances, a prudent thing to do to accomplish the object and a proper thing to do, although an accident happened on one occasion, it would not be negligence. That is one of the questions now for you to determine. Was it or was it not?

Then again, if that plan was used generally—I don't mean by every company around there, but generally in use, if that was the usual and customary way among gas companies, then

it could not be negligence, because that would be the only proper way to do it. If an accident happened he would have to submit to it as an accident. . . . .

"After you get past the question of negligence you come to the next question, and that is, was the plaintiff himself guilty of negligence? Could he, by acting in a reasonably prudent and careful manner, have stopped all this trouble in his houses? . . . .

"Something is said on the part of the plaintiff as to the circumstances surrounding him, and I may say here as to natural gas that it is a dangerous and explosive substance, and requires extra care in its management. But that rule applies just as well to the consumer as it does to the company. We are to remember and know, and we do know, that it is explosive and dangerous just as well as they do. Hence the care must be greater than ordinary care. The rule applies with just as much weight to the consumer as it does to the company. [Now keep that in view when he goes down in the cellar. He knows that the gas is coming on, he sees the flames, he turns out the furnace; it blazes up again, he is within three feet of the valve that turns it off. [It is stated there was no regulator for the house in there; probably it would have been a great deal better if there had been. He did his own plumbing, and it is for you to say whether he should have furnished a regulator himself, or whether the company should have done so.] [9] It appears there was none there at any rate. Well, now, under those circumstances did he act as a prudent and careful man when he was within three feet of the valve and did not turn it off, being there with the object of turning off the gas in the furnace and knowing the pressure had come on. It is for the jury to say under those circumstances.] " [10]

Plaintiff's points were among others as follows:

"2. The defendant company is affected by law with a knowledge of the dangerous and explosive character of the gas supplied to its customers, and at the time of the injury complained of it was bound to use a high degree of care in the construction, maintenance, operation and inspection of its lines, with a constant regard to the dangerous character of the substance conveyed in them; and, if the jury find that proper care, in the construction, maintenance, operation and inspection of its line

at the point where the regulator was kept, at or near the Roth
well, was not used, and that the want of such care caused the
destruction of the regulator, and thereby the pressure of gas
became unrestrained, entered the plaintiff's building in exces-
sive quantities, and was there ignited and exploded, then the
defendant was guilty of actionable negligence." Affirmed. [1]

" 3. Even if the defendant company employed competent
persons to construct its line of supply pipe, and to maintain,
operate and inspect it, yet this did not relieve the company
from liability for defective and negligent construction, mainte-
nance and inspection ; and, if the jury find that the construc-
tion, maintenance and inspection of the defendant's line of pipe
and regulator near the Roth well was in fact defective and
negligent, and that by reason thereof the regulator became
broken down and lost control over the gas in the line, which
thereby entered the plaintiff's dwelling and caused the injury
complained of, then the defendant was guilty of actionable
negligence." Affirmed. [2]

" 4. Even if the jury find that other companies engaged in
transporting and supplying natural gas for consumption con-
structed, maintained and operated their regulators on similar
lines in the same way used by the defendant with its regulator
through which the gas was supplied to the plaintiff ; yet, if
they further find that such a method of operating the regulator
was not adopted generally, usually and ordinarily by other com-
panies engaged in the same business ; that proper care and pru-
dence required that, under the circumstances, a lighted torch
or jet should not have been kept under the defendant's regu-
lator; that, by reason of the keeping of such torch or jet under
it, a leak of gas from the line was ignited and the control of
the regulator destroyed ; and that the gas, rushing thus uncon-
trolled into the plaintiff's dwelling, was ignited and exploded,
without any negligence of the plaintiff proximately contributing
thereto, then the defendant was guilty of negligence, and the
verdict should be for the plaintiff." Affirmed. [3]

" 5. The party who exposes another to danger, and the party
so exposed, are not bound to equal degrees of vigilance. It is
for the jury to say whether the plaintiff, under all the circum-
stances existing when he discovered an excessive and danger-
ous pressure of gas escaping into his dwelling, acted as a man

of ordinary care and prudence would have acted; if he did so act, he is not to be charged with contributory negligence." Affirmed. [4]

"6. In determining whether any act or any omission of the plaintiff constituted contributory negligence on his part, which should prevent his recovery for the negligence of the defendant, proper allowance must be made for the embarrassing position in which he was placed, when, if his testimony is believed, just as he thought he had turned out all the gas burning in his house, he immediately afterward saw the flash from the furnace, and heard the cry of his wife that the cellar was full of gas; and, if the jury find that the plaintiff, in leaving the cellar without turning off the stopcock at the wall, adopted the course which ordinarily prudent men would have adopted under the same circumstances, then he was not chargeable with contributory negligence; and if the defendant was guilty of negligence resulting in the burning of the plaintiff's dwelling and property, then the verdict should be for the plaintiff for such amount as will compensate him for his loss thus occasioned." Affirmed. [5]

Defendant's points were among others as follows:

"4. If the jury find that the plaintiff, in failing to close the valve which would have shut the gas from the house, when he was standing in its immediate vicinity, did not act as a person of ordinary intelligence would have acted under the circumstances, the verdict must be for the defendant. *Answer:* Affirmed, if you find that the plaintiff did not act as a careful and prudent man would have done under the circumstances." [6]

6. Request for binding instruction.    Refused. [7]

Verdict and judgment for plaintiff for $5,675.89.    Defendant appealed.

*Errors assigned* were (1–10) instructions, quoting them.

*George W. Guthrie,* for appellant, cited: As to negligence, McCormick v. Washington Twp., 112 Pa. 185; Clulow v. McClelland, 151 Pa. 583; Megargee v. Phila., 153 Pa. 340; Chartiers Twp. v. Phillips, 122 Pa. 609; Herr v. Lebanon, 149 Pa. 227; Schaeffer v. Jackson Twp., 150 Pa. 145; Reese v. Clark,

146 Pa. 465; Waldon v. Finch, 70 Pa. 460; Mansfield C. & C. Co. v. McEnery, 91 Pa. 185.

As to contributory negligence: McGill v. Ry., 152 Pa. 331; Gates v. R. R., 154 Pa. 566; Rung v. Shoneberger, 2 Watts, 27; R. R. v. Stinger, 78 Pa. 219; Hoag v. R. R., 85 Pa. 293; Gramlich v. Wurst, 86 Pa. 74; R. R. v. Fries, 87 Pa. 234; Koons v. West. Union Tel. Co., 102 Pa. 164; McCully v. Thaw, 40 Pa. 399; R. R. v. White, 88 Pa. 327; Corbalis v. Newberry Twp., 132 Pa. 9; Dalton v. Tyrone, 137 Pa. 18; McGill v. Ry., 152 Pa. 331; Baker v. Borough, 151 Pa. 234; Nitro-Glycerine Case, 15 Wall. 538; McCormick v. Washington Twp., 112 Pa. 185; Clulow v. McClelland, 151 Pa. 583; Megargee v. Phila., 153 Pa. 340; Chartiers Twp. v. Phillips, 122 Pa. 609; Herr v. Lebanon, 149 Pa. 227; Strawbridge v. Phila., 2 Penny. 419; Holly v. Boston Gas Co., 8 Gray, 123; Gregg v. Gregg, 55 Pa. 227.

*J. M. Garrison, Boyd Crumrine* with him, for appellee, cited: As to negligence; Turnpike Co. v. R. R., 54 Pa. 350; 8 A. & E. Enc. L. 1273–74; Brown v. N. Y. Gas Co., Anth. 351; Priggs v. Oliver, 4 H. & C. 403; Mulcairns v. Janesville, 67 Wis. 24; Scott v. London Docks Co., 3 H. & C. 596; Kearney v. London etc. Ry., L. R. 6 Q. B. 759; L. R. 5 Q. B. 411; White v. R. R., 144 Mass. 404; Seybolt v. R. R., 95 N. Y. 562; Lowery v. Manhattan Ry. Co., 99 N. Y. 158; Mullen v. St. John, 57 N. Y. 567; Koelsch v. Phila. Co., 152 Pa. 356; Lee v. Woolsey, 109 Pa. 124; Schum v. R. R., 107 Pa. 8; West Chester etc. R. R. v. McElwee, 67 Pa. 311.

As to contributory negligence: Schall v. Cole, 107 Pa. 1; McCully v. Clarke, 40 Pa. 406; Oil City Gas Co. v. Robinson, 99 Pa. 1; Penna. R. R. v. Kilgore, 32 Pa. 292.

OPINION BY MR. JUSTICE WILLIAMS, December 30, 1893:

Two questions were submitted to the jury on the trial of this case: First, was the burning of the plaintiff's dwelling house by the extraordinary inflow of gas due to the negligence of the gas company-defendant? Second, was the plaintiff guilty of contributing negligence? It appeared that the plaintiff's house was situated in a village called Arlington. That several houses

in the village, among which was that of the plaintiff, were supplied with natural gas as a fuel by the defendant company. Upon their line the gas company had placed a regulator, to reduce the pressure of the gas in the houses so supplied, to a point of safety. The action of the regulator was liable to be affected by cold, and to counteract this a small gas jet was allowed to burn just under the regulator. The theory of the plaintiff was that this gas jet had caused the joints where the regulator was attached to the line to open so as to permit the escape of gas therefrom ; and that this gas taking fire had increased the heat until the regulator was destroyed; and the gas, liberated from restraint, had rushed into the plaintiff's house with more force than his plumbing could withstand, and taking fire had consumed the house. Whether the facts were as alleged was a question for the jury, and upon the evidence we are unable to see how it could have been withdrawn from them.

Upon the other question the facts were not in controversy. The plaintiff becoming aware of the presence of an unusual quantity and pressure of gas went down into his basement to turn it off at his furnace. The pressure was too strong to be controlled by the cut-off at the furnace, but as he stood by the furnace he was within three feet of the cut-off at the outer wall of the basement and only had to raise his arm and turn the valve in order to control the gas. This he did not do ; and his failure to shut off the gas in this manner was the contributory negligence alleged. The plaintiff sought to explain his failure to use the means of protection within his reach, by alleging that his situation was one of great danger, and that the excitement occasioned by it, and by the warning of his wife, led him to rush from the basement without an instant's delay. His neighbors acted with more coolness and saved their homes by using the cut-off at the wall. He could have done the same thing in much less time than was required to reach the floor above, and his neglect of this means of safety was properly pressed as strong evidence of contributory negligence. The question, however, was one of fact. Whether his conduct was, when all the circumstances were considered, that of a man of ordinary prudence or not, depended upon the judgment of the jury. The question was submitted to them under instructions

that were fair to both sides, and has been disposed of by them. If their verdict was mistaken, as we might think it to be from an examination of the evidence as it appears in the printed books, the remedy was in the court below.    We have been pressed to reverse this case because of a remark of the learned judge which is made the ground of the ninth and tenth assignments of error.    Looking at this remark alone, it might seem as though the question of the necessity for a regulator inside the plaintiff's house, and whether it was the duty of the plaintiff or the defendant to furnish it, was submitted to the jury as one of the questions in the cause.    But looking at the charge as a whole it seems to us quite clear that this was not intended by the learned judge, and that the two questions of fact on which the case really depended were submitted so clearly by him, as the proper questions for their consideration, that they could not have been misled by the remark complained of in these assignments.    We think the appellant has more reason to complain of the jury than of the learned judge.

None of the assignments is sustained and the judgment is affirmed.