Thomson, P. J.,
delivered the opinion of the court.
This action was brought by the plaintiff in error against the defendant in error to recover damages for injuries which she sustained from a fall while passing over a sloping section of sidewalk, upon which there was an accumulation of snow and ice.
*328 The complaint set forth two causes of action. The first charged improper construction of the section in that a considerable incline was given to it, making it dangerous to pedestrians using it, and negligence in suffering it to remain in its original unsafe condition. The second charged negligence in permitting snow and ice to accumulate and remain on the sidewalk, rendering it dangerous to those traveling upon it. Before trial the second cause of action was dismissed, and the case was tried upon the first. The trial resulted in a judgment for the defendant, from which the plaintiff has prosecuted error.
It appears from the evidence that upon Main street, a traveled thoroughfare of the city, there was a section of sidewalk about six feet in length, which sloped or pitched so that the upper portion was about eighteen inches higher than the lower; tha-t on the 11th day of December, 1891, when the accident occurred, it was partially if not wholly covered with ice; and that the plaintiff, while walking over the incline, slipped upon the ice, and fell, sustaining severe injuries, which confined her to her bed for a long period, necessitating a large outlay for surgical and medical treatment, and the effects of which are permanent.
The walk was constructed, or rather reconstructed, in 1887 or 1888 under the supervision of Mr. Pierson, the street commissioner. Before that time the descent was accomplished by means of steps. The walk, as reconstructed, consisted of smooth plank. There were no cleats or strips across it, or so far as appears, any other safeguard against the danger incident to the abruptness of the slope. Mr. Wall, a civil engineer, who was acquainted with the street and incline at the time of, and before the accident, testified that the street then was, and for at least six months previously had been, approximately level. Mr. Pierson testified that when he repaired the street and sidewalk in 1887 or 1888, the grade of the street to the east of the incline was higher, and of the sidewalk lower, than to the west of the incline. This statement, taken in connection with the other testimony *329 of the witness, is somewhat obscure, and we find it a little difficult to understand just what it was intended to mean. But whatever may have been the relative grade of the street and sidewalk at that time, the evidence tended to prove that for a considerable period before the happening of the accident the street was practically level, and that there was a sloping walk on the side of a level street. An incline, such as this, when its surface becomes icy or slippery, is necessarily in an unsafe condition for pedestrians walking over it. Accidents are liable to occur on any icy surface, but no evidence is required to show that one is more liable to fall when descending a slippery inclined plane than when walking over a slippery level. If when this walk was built, the contour of the ground on which it was laid, or the surrounding conditions, did not render an incline necessary, then the walk was negligently and improperly constructed. If on the other hand it originally followed the natural formation, but the city afterwards made such changes as unnecessarily to leave a sloping sidewalk adjoining a level street, the permitting of the incline to remain was negligence. That the incline either was at first, or afterwards became, unnecessary, is indicated by the fact, disclosed by the evidence, that after the accident occurred, the upper portion of the incline was lowered about a foot, and the lower portion raised four or five inches, thus reducing the walk to a grade nearly, if not quite, level. However, upon the questions involved, the evidence was not conclusive, and if there had been a proper submission of the case by the instructions, we would not undertake to disturb the verdict.
Regarding the duty of the city in respect to the construction and maintenance of its sidewalks, and upon the question whether this sidewalk was so constructed, or so maintained, as to be unnecessarily dangerous in climatic conditions which the defendant ought to have anticipated, we are unable to say that the instructions are objectionable. But, together with the question of the negligence of the city, the court submitted the question whether the plaintiff was guilty of contributory *330 negligence. The jury were instructed that before a recovery could be had, it must appear upon the whole testimony that the injured party used, under all the circumstances, care to avoid the danger. Contributory negligence is a matter of defense, and a defendant who intends to rely upon it must plead it. It was not pleaded, and was not an issue in the case. But aside from this, there was not a syllable of evidence by which the instruction might be justified. There was notiiing to indicate that when the plaintiff undertook to pass over the sloping walk, she did not use all the caution and care and prudence of which she was capable, or which the law exacts. On cross-examination she testified that she sprained her ankle in 1880, and was lame for a week or two, but that hr body and limb she was perfectly sound at the time of her fall. She said that at one time she had a corn on the bottom of her foot, but that the corn had been cured long before the accident. There was apparently an effort on the part of the city to prove that she was lame at the time, and that she was, therefore, imprudent in venturing upon the sloping portion of the walk. The questions put to her were followed up by questions of a similar character to the defendant’s witness Pierson; and in answer he said that before the accident, — how long before he did not say, — she had a halt in her walk ; but he also said that for sometime previous to the accident, he had not observed that she was lame; that he saw her a few days before she fell, and did not see that she limped. The evidence concerning her lameness was the only evidence by which contributory negligence was sought to be proved; and while the evidence was inadmissible under the pleadings, yet for the purpose for which it was elicited it was a failure. It proved nothing against the plaintiff. But the jury may have regarded it as impoiy tant, and as having a bearing on her right to a recovery, when they listened to the instruction of the court on the subject of contributory negligence.
Instructions must be based on evidence. A correct decla/ration of the law is erroneous when there is no evidence to *331 which it can he applied. It can have no effect except to mislead the jury; and where an instruction of that nature has been given, we are bound to presume that the jury were misled by it. See Fisk v. Electric Light Co., 3 Colo. App. 319.
The judgment must be reversed.

Reversed.