[No. 2125.]

## CHARLES E. WECK, RESPONDENT, v. RENO TRACTION COMPANY (A CORPORATION), APPELLANT.

[149 Pac. 65]

1. EVIDENCE—CONTROL OF TESTIMONY BY PHYSICAL LIMITATIONS.

Undisputed physical facts, which necessarily point to but
one conclusion, cannot be overcome by contradictory oral
testimony.

2. TRIAL—TAKING CASE FROM JURY—MOTION FOR NONSUIT—QUESTIONS OF FACT.

Where reasonable men might fairly differ on the conclusions
to be drawn from the evidence, the case should not be taken
from the jury on motion for nonsuit.

3. TRIAL—MOTION FOR NONSUIT—ESTIMATION OF EVIDENCE.

On motion for nonsuit, the trial court must construe the
evidence most favorably to the plaintiff.

4. STREET RAILROADS—INJURIES IN COLLISION—LIABILITY OF ROAD —QUESTION FOR JURY.

In an action against a street railroad for injuries sustained
by an automobile in collision with one of its cars, evidence *held*
to take case to jury.

5. STREET RAILROADS — INJURY ON TRACK — DUTY TO LOOK AND LISTEN.

The duty which rests upon one about to cross the track of
a steam railroad to look and listen does not rest upon one
about to cross that of a street railroad, owing to the different
conditions; the question of negligence of both parties in case
of a collision between a street car and one lawfully using the
street being of fact to be determined upon all the circumstances.

6. STREET RAILROADS—INJURY ON TRACKS—PERSONS IN DANGEROUS POSITION—JUDGMENT REQUIRED.

One who finds himself in a perilous position on a street-car
track is not required to exercise the soundest judgment under
penalty of being found guilty of contributory negligence.

7. STREET RAILROADS—INJURY ON TRACKS—LAST CLEAR CHANCE.

Where plaintiff, in his automobile, in turning from the side
of the road around obstructing vehicles onto the street-car

track, discovered a car coming toward him at an excessive speed, and exercised reasonably good judgment in trying to extricate himself from danger, his negligence in going upon the track, if any, stopped at such point, and having stopped, and not continued until the moment of the accident, defendant's negligence in running the car at an excessive speed was the proximate cause of the injury to plaintiff's automobile by the collision, under the doctrine of last clear chance.

8. TRIAL—INSTRUCTIONS—ABSTRACTNESS.

The giving of an instruction not applicable to the evidence is erroneous, though abstractly correct.

9. TRIAL—OBJECTIONS TO INSTRUCTIONS—SPECIFICATION.

Where an objection and exception were taken to an instruction a portion only of which was abstract, but did not point out that such portion was not based on evidence, error could not be predicated on the giving of the charge, for only where a charge is erroneous as a whole or asserts but a single proposition is a general exception available.

10. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ERROR NOT URGED AS GROUND FOR NEW TRIAL—STATUTE.

Under Rev. Laws, sec. 5328, providing that where an appeal is based on the ground that the evidence does not justify the verdict or support findings, or upon alleged errors in ruling upon evidence, or upon instructions claimed to be erroneous, a motion for new trial must be made and determined before the appeal is taken, where the abstractness of an instruction was not urged as ground for new trial, the appellate court could not consider the point.

11. APPEAL AND ERROR—RESERVATION OF GROUNDS OF REVIEW—NECESSITY FOR OBJECTION OR EXCEPTION.

The giving of an instruction not made the ground of objection and exception when given cannot be taken advantage of on appeal as error.

12. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SPECIFICATION OF ERROR.

An erroneous instruction not specified as error in the memorandum of exceptions cannot be considered on appeal.

13. TRIAL—INSTRUCTION—CAPITALIZING PORTION.

The practice of capitalizing a portion of an instruction should not be indulged in.

14. MASTER AND SERVANT—LIABILITY OF MASTER FOR ACTS OF SERVANT —MOTORMAN.

A motorman operating defendant street-railroad company's car was a servant of such company, whose negligence in the scope of his duties was imputable to defendant.

15. TRIAL—INSTRUCTIONS—STRIKING OUT PORTION.

It is better practice to rewrite an instruction when modifying it than to strike out a portion with a pen, leaving it in such condition as to be easily read.

Points decided

16. TRIAL—INSTRUCTIONS—APPLICABILITY TO ISSUES—SPEED OF CAR AFTER ACCIDENT.

The speed of defendant street-railroad company's car after it struck and injured plaintiff's automobile was a matter immaterial to the issues, in an action for injuries sustained by such automobile in collision, where it threw no light on what preceded, and an instruction touching it was properly stricken; the matter being improper for instruction except to the effect that it be disregarded.

17. TRIAL—CONTROL OF VERDICT—FAILURE TO FIND—STATUTE.

Under Rev. Laws, sec. 5222, providing that where a special finding of facts is inconsistent with the general verdict the former controls, and the court must give judgment accordingly, if a finding in defendant's favor on special interrogatories would not be inconsistent with a general verdict for plaintiff. a failure to find at all on such interrogatories cannot control such general verdict.

18. HIGHWAYS—LAW OF THE ROAD.

The "law of the road" in the United States is that vehicles, when passing, should turn to the right.

19. APPEAL AND ERROR—TRIVIAL ERROR—CONTROL OF VERDICT—FAILURE TO MAKE SPECIAL FINDINGS—STATUTES.

Under Rev. Laws, sec. 5222, providing that where a special finding of facts is inconsistent with the general verdict the finding controls, and the court must give judgment accordingly, where, in an action against a street-railroad company for damages to plaintiff's automobile in collision, the jury failed to answer special interrogatories whether anything prevented plaintiff from turning his automobile to the left off defendant's track when he saw the approaching street car, instead of to the right, as he did, after speeding up to pass vehicles obstructing that side of the road, considering the subjective influence upon plaintiff of the law of the road, and that it was necessary to decide instantly, on account of the speed of the approaching car, it could not be said as matter of law that plaintiff was negligent in turning to the right, and the jury could properly find that plaintiff was not negligent in taking the track at first, that defendant was negligent in running its car at an excessive speed, and that plaintiff acted reasonably in turning to the right, although he might have turned to the left with safety, so that the failure to find whether he could so have turned to the left, assuming that answer would have been that he could, in favor of defendant, was not so inconsistent with the general verdict for plaintiff as to call for its control by the failure to find, justifying reversal of judgment entered on the verdict for plaintiff under Rev. Laws, sec. 5066, providing that no judgment shall be reversed for error not affecting the substantial rights of the parties.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by Charles E. Weck against the Reno Traction Company, for damages to an automobile. From a judgment for plaintiff and denial of motion for a new trial, defendant appeals. **Affirmed.**

*Harwood & Springmeyer,* for Appellant:

Questions of the conflict of evidence with known physical facts have frequently been passed upon by courts. (Hayne, New Trial and Appeal, sec. 238; Elliott on Evidence, sec. 39; *Bomscheuer* v. *Con. Tr. Co.,* 47 Atl. 872; *Hunter* v. *N. Y., O. & W. Ry. Co.,* 23 N. E. 9; *Payne* v. *Chicago & A. R. Co.,* 38 S. W. 308; *Young* v. *Railway Co.,* 57 Kan. 144, 45 Pac. 583; *Lake Erie & W. Co.* v. *Slick,* 41 N. E. 365; *Medcalf* v. *St. Paul City Ry.,* 82 Minn. 18, 84 N. W. 633; *Ferris* v. *Hersheim,* 24 South. 771; *Gibson* v. *Southern R. Co.,* 140 Fed. 410; *Peters* v. *So. R. Co.,* 33 South. 332; Elliott on Railroads, sec. 1703.)

The law appears to be that a traveler, in the exercise of due care, must look and listen before he crosses a street-railway track; *a fortiori,* he should look and listen before driving along the course of the track. (*Nein* v. *LaCrosse City Ry. Co.,* 92 Fed. 85; Babbit on Motor Vehicles, sec. 306; *Kelly* v. *Wakefield Ry.,* 56 N. E. 285; *Gregory* v. *Slaughter,* 99 S. E. 345; *Clark* v. *Conn. Co.,* 76 Atl. 523; *Campbell* v. *St. Louis Co.,* 99 S. W. 58; *Lorenz* v. *Tisdale,* 111 N. Y. S. 173; *Beeman* v. *Puget Sound Co.,* 139 Pac. 1087; *Bowden* v. *Walla Walla Co.,* 140 Pac. 549.)

The motion for nonsuit and dismissal should have been sustained upon the ground that there was no evidence of defendant's negligence, but that the evidence on behalf of plaintiff and the physical facts showed him to have been negligent. The last-clear-chance-to-avoid rule is required as an instruction only when there is evidence concerning it. (*Drown* v. *Northern O. T. Co.,* 81 N. E. 326; *West Chicago Co.* v. *Schwartz,* 93 Ill. App. 387; *Quade* v. *Metropolitan Co.,* 39 N. Y. Supp. 335.)

The law of the road does not require the drivers of vehicles always to turn to the right. (Babbit, Motor Vehicles, sec. 253c; Elliott on Roads and Streets, 619;

*Strouse* v. *Whittelsey*, 41 Conn. 559; *Wayde* v. *Carr*, 2 Dow
& Ry. 255; *Johnson* v. *Small*, 5 B. Mon. 25; *Landa* v.
*McDermott*, 16 S. W. 802; *Meanow* v. *Utteck*, 1 N. W. 221;
*Cutright* v. *Exp. Co.*, 175 Ill. App. 269; *Lyons* v. *Child*, 61
N. H. 72; *Denny* v. *Strauss*, 109 N. Y. Supp. 26; Nellis on
Street Railways, 2d ed. 987.)

The court cannot, after submitting material special
issues to the jury, refuse to require the jury, upon the
rendition of a general verdict and some special verdicts,
to make findings upon all submitted material issues.
(Rev. Laws, sec. 522: Clementson, Special Verdicts, pp.
103–113; *Hallwood Cash R. Co.* v. *Dailey*, 79 Pac. 158;
*Stewart* v. *Henningsen P. Co.*, 129 Pac. 181; *Bargna* v.
*Bargna*, 127 S. W. 1156; *Brown* v. *Douglass L. Co.*, 129
N. W. 161; *Perry Co.* v. *Wilson*, 67 N. E. 183; *Life Assur.
Co.* v. *Haughton*, 67 N. E. 950; *O'Connell* v. *United
Railroads*, 124 Pac. 1023; *Larsen* v. *Leonardt*, 96 Pac. 395;
*Doom* v. *Walker*, 138 N. W. 138; *Garvin* v. *Garvin*, 123
Pac. 71; *Cleveland Ry. Co.* v. *Asbury*, 120 Ind. 289; *Rathbun*
v. *Parker*, 72 N. W. 31; *McKenzie* v. *McKenzie*, 69 S. E.
134; *Redford* v. *Street Ry. Co.*, 36 Pac. 1085; *Kahn* v.
*Central S. Co.*, 2 Utah, 379.)

*Huskey & Springer*, for Respondent:

There was sufficient evidence that the defendant was
negligent to warrant the submission of the case to the
jury. (*Still* v. *S. F. R. Co.*, 154 Cal. 559, 98 Pac. 672, 129
Am. St. Rep. 177; *Copriviza* v. *Rilovich*, 4 Cal. App. 26, 87
Pac. 398; *Pilmer* v. *Boise Tract. Co.*, 14 Idaho, 327, 94 Pac.
432, 125 Am. St. Rep. 161; *Adams* v. *Bunker Hill Mining
Co.*, 12 Idaho, 637, 89 Pac. 624; *Gunn* v. *Gunn*, 74 Ga. 555,
58 Am. Dec. 447; *Cahill* v. *Ill. Cent. R. Co.*, 137 Iowa, 577,
115 N. W. 216; *Cahill* v. *Phelps*, 198 Mass. 332, 84 N. E. 496.)

Courts will be very cautious in holding that the testi-
mony of witnesses as to facts to which they distinctly
testify is irreconcilable with physical facts. (Thompson
on Trials, sec. 2264; *Coady* v. *St. Louis R. Co.*, 85 Mo. 79.)

The evidence does not show negligence on the part of
the plaintiff. Where the evidence is such that different

minds may reasonably draw different conclusions as to contributory negligence, the question is for the jury. (29 Cyc. 631; *Florence* v. *Snook*, 20 Colo. App. 356,78 Pac. 994; *O'Neill* v. *Chicago R. Co.*, 62 Neb. 357, 86 N. W. 1098; *Clarke Thread Co.* v. *Bennet*, 58 N. J. Law, 404, 33 Atl. 404; *Thomson* v. *Issaquah Shingle Co.*, 43 Wash. 253, 86 Pac. 588.) Failure to exercise the greatest prudence, or the most exact judgment, in a sudden emergency, does not charge one with contributory negligence as a matter of law. The question is one of fact for the jury. (*Linnehan* v. *Sampson*, 126 Mass. 506, 30 Am. Rep. 632; *Wright* v. *Bowler*, 3 N.Y.Supp.742; *Stoughton* v. *Manf. Nat. Gas Co.*, 159 Pa. St. 64, 28 Atl. 227.)

The court did not err in its instructions to the jury. There was no error in the instruction as to the last-clear-chance rule. Error in giving or refusing instructions is harmless where the complaining party could not have been prejudiced. (*Jacksonville R. Co.* v. *Peninsula Land Co.*, 27 Fla. 157, 9 South. 661, 17 L. R. A. 33, 65; *Chicago R. Co.* v. *Levy*, 160 Ill. 385, 43 N. E. 357; *McLean* v. *Burbank*, 11 Minn. 277; *Smith* v. *Union Trunk Line*, 18 Wash. 351, 51 Pac. 400, 45 L. R. A. 169.)

The questions as to which no findings on special issues were returned were not such as the defendant had a right to have answered. (*Plyler* v. *Pac. Port. C. Co.*, 92 Pac. 57; *Williams* v. *S. F. & N. W. R. R. Co.*, 93 Pac. 122; *Miller* v. *Firemen's Fund Ins. Co.*, 92 Pac. 332; *Pigeon* v. *W. P. Fuller Co.*, 105 Pac. 976; 20 Ency. Pl. & Pr. 30; *C. & N. W. R. Co.* v. *Dunlevy*, 129 Ill. 132, 22 N. E. 15; *Wakefield* v. *Wakefield W. Co.*, 182 Mass. 429, 65 N. E. 814.)

By the Court, COLEMAN, J.:

Respondent, who was plaintiff in the lower court, on December 17, 1913, while out in his automobile in the city of Reno, drove along the east side of Elm Street, and upon reaching Sierra Street turned in a southerly direction; and there being a wagon backed up against the sidewalk, with a horse hitched to it, whose head came within three feet of the track of appellant, an auto-truck standing just beyond the horse and wagon, and

another horse and wagon standing in a similar position to the one first mentioned and a short distance beyond the auto-truck, it was necessary for respondent either to go along the street-car track until getting past the last horse and wagon mentioned, or go on the opposite (left-hand) side of the said track. Just as respondent turned in front of the first horse and wagon, he saw a car of appellant about 225 feet away, approaching at a speed approximated at from about twenty-five to thirty miles an hour. There was also an automobile on the left-hand side of the track, traveling in a northerly direction.

Respondent testified:

"Well, I was turning around, had to go around the horse, and it put me on the track; I could not do anything else. If I had pulled across the street, it would have been against the law; I would have run into an automobile, besides."

Respondent speeded up his automobile and tried to get past the second horse and wagon and turn off of the track to the right, and just as he was leaving the track the rear end of the automobile was struck by the street car (which weighed about eighteen tons), and carried a distance of about twenty-five feet back upon Elm Street, badly damaging the automobile.

Respondent brought suit to recover damages, and upon the trial, plaintiff having rested his case, a motion for nonsuit was interposed, which being denied, the case was submitted on plaintiff's evidence. The jury brought in a verdict for the plaintiff. From a denial of a motion for a new trial and the judgment in favor of respondent, appellant brought the case to this court.

It is contended that the court erred in denying appellant's motion for a nonsuit. It is urged that, as witnesses Weck and James were going in the direction of the approaching street car, it was impossible for them to estimate the speed of the street car. The case of *Chicago Gen. R. Co.* v. *Novaeck,* 94 Ill. App. 178, cited in support of the contention, is not in point. That is a case where the court said, "his (plaintiff's) evidence shows that his attention and efforts were directed to urging

his team so as to get off the track," and consequently he could not estimate the speed of the train. But an entirely different theory is urged here. We cannot say that the evidence as to the speed of the street car was not substantially correct. Nor is the fact that the witnesses did not undertake to fix the speed of an automobile, which was going along the left-hand side of the street-car track, any reason to assume that they could not form a fairly accurate estimate of the speed of the street car. Their attention was centered upon the street car, while they ignored the automobile, so far as estimating its speed.

[1] The point most seriously urged under this assignment is the contention that the physical facts flatly contradict the testimony of the witnesses, and consequently the jury should not have been permitted to consider the case. In the case of *Mandel* v. *Washington Water Power Co.*, 144 Pac. 921, the Supreme Court of Washington uses this language:

"Physical facts which are undisputed and speak the truth with unerring certainty must control."

This court, in the case of *Knock* v. *Tonopah & G. R. Co.*, 38 Nev. 143, 145 Pac. 940, says:

"It is urged that the case should be reversed because the plaintiff's testimony is contradicted by physical facts. If any physical fact made it impossible for the engineer to back up without signal and crush the respondent's arm, such fact would control, and the testimony in case of respondent would fall. If his testimony regarding any matter essential to his recovery were contradicted by any physical fact, the case would have to be remanded. Testimony contrary to a physical fact regarding a matter which is not controlling may weaken the credibility of the witness, but is not ground for reversal."

With the general rule that undisputed physical facts which speak the truth unerringly cannot be overcome by oral testimony we most heartily agree, but the testimony in this case does not bring it within the rule. If two engines had approached each other along a railway track

at the rate of 25 miles an hour and were 400 feet apart, it could be told exactly how long it would have taken them to meet. In this supposed case we have two fixed, positive facts to figure on, namely, the distance the engines are apart and the exact speed at which they are traveling. If a witness were to testify that it took two minutes for the two engines to collide, we could ascertain the correctness of his testimony by invoking the science of mathematics. Such is not the situation in the case before us. Everything was approximated. The distance between the automobile and the street car was fixed by the testimony at "about" 200 or 225 feet, the speed of the automobile at "about" 4 to 7 miles an hour, and of the street car at "about" 25 to 30 miles an hour. So there are three elements approximated—the distance between the street car and the automobile, the speed of the automobile, and the speed of the street car.

[2-4] In view of the well-established rule that a case should not be taken from a jury on a motion for nonsuit where reasonable men might fairly differ on the questions of fact, and that the court must construe the evidence most favorably to the plaintiff when such a motion is under consideration (*McCafferty* v. *Flinn*, 32 Nev. 273, 107 Pac. 225), we cannot say that the court erred in denying the motion.

[5] It is urged that the evidence shows such contributory negligence on the part of the plaintiff as to preclude his recovery, in that he should have looked and listened before turning onto the street-car track at Sierra Street. Such is the well-known rule applicable to steam railroads, but we think the better rule and the weight of authority are to the contrary so far as street-car lines are concerned. The Supreme Court of Colorado, in *Philbin* v. *Denver City Tramway Co.*, 36 Colo. 331, 85 Pac. 631, lays down the following rule:

"The duty imposed upon persons crossing steam-railway tracks to stop, look, and listen, is not rigidly applied to persons traveling a street used by a street railway."

The Supreme Court of Utah, in *Spiking* v. *Con. Ry. &*

*P. Co.*, 33 Utah, 323, 93 Pac. 841, uses the following language:

"It would seem to require but slight reflection to realize that, in the nature of things, there must be considerable difference between an attempt to cross a street railway and a steam railway, or in passing along the tracks of the one or the other. Without stopping to point out all the differences, we may be permitted to call attention to one of the fundamental differences between street and steam railways. The part of the street on which a street railway track is laid, and over which cars are operated, is not withdrawn from public use and travel. The rights and duties of the public and the street-car operatives are mutual and reciprocal. The only right that the operators of a street railway possess over the public generally is a preferential right of passage over the tracks with the cars, and that between public crossings it is always the duty of the pedestrian or the person driving a vehicle to see to it that he does not impede the street car. But the street-car company, in operating its cars, must likewise at all times and places exercise ordinary care so as not to injure any one who may be on or near the track, and at public crossings must have its cars under the control of the operator, and must exercise reasonable care to have them so in approaching the crossings; the degree of care to be exercised always depending upon the prevailing circumstances and conditions. As a general rule, therefore, where a collision occurs between a person lawfully using the street and a street car, the question as to whether the operator or such person, or both, were exercising the degree of care that the law imposes, is a question of fact depending upon all the surrounding circumstances and conditions."

In *Benjamin* v. *Holyoke St. Ry. Co.*, 160 Mass. 3, 35 N. E. 95, 39 Am. St. Rep. 446, the court says:

"The next particular assigned is that she failed to look to see if a car was coming; and a special instruction was asked, based on the assumption that she failed to look. This, also, was for the jury, The accident did not occur

from a collision at the street crossing. The plaintiff had passed that point, and was proceeding on Appleton Street. The court rightly refused to instruct the jury that a mere failure to look would prevent her from recovering. This has been so held even in cases of collision. (*Shapleigh* v. *Wyman*, 134 Mass. 118; *French* v. *Railroad Co.*, 116 Mass. 537.) The question was left to the jury with proper instructions."

In *Swain* v. *Fourteenth St. R. Co.*, 93 Cal. 184, 28 Pac. 830, the Supreme Court of California uses the following language:

"And it was clearly a question for the jury whether the driver of the patrol wagon did use ordinary care in endeavoring to avoid the collision, or whether he ought not to have turned out of the track more quickly when he saw defendant's car approaching. This evidence was also sufficient to show that the driver of the car was negligent in omitting, without any apparent excuse, to look ahead, and observe whether the track was clear. It is the duty of such a driver, equally with the driver of any other vehicle, to observe what is in the road before him, so as to avoid inflicting injury upon others, if practicable."

To the same effect, see *Finnick* v. *Boston & N. St. Ry.*, 190 Mass. 382, 77 N. E. 500; *Robbins* v. *Springfield St. Ry. Co.*, 165 Mass. 30, 42 N. E. 334; *Indianapolis St. Ry. Co.* v. *Schmidt*, 35 Ind. App. 202, 71 N. E. 663, 72 N. E. 478; *Kramm* v. *Stockton El. R. Co.*, 3 Cal. App. 606, 86 Pac. 740, 903; *Lake Roland El. Ry. Co.* v. *McKewen*, 80 Md. 593, 31 Atl. 797; *Bremer* v. *St. Paul City Ry. Co.*, 107 Minn. 326, 120 N. W. 382, 21 L. R. A. n. s. 887; 21 Am. Neg. Rep. 172; *White* v. *Wor. Con. St. R. Co.*, 167 Mass. 43, 44 N. E. 1053; 12 Am. Neg. Cas. 56.

[6–7] It is contended on the part of appellant that the court erred in instruction No. 13, wherein it sought to define the "last clear chance" doctrine, and counsel relies with great confidence upon the case of *Drown* v. *Northern Ohio Traction Co.*, 76 Ohio St. 234, 81 N. E. 326, 10 L. R. A. n. s. 421, 118 Am. St. Rep. 844, where it is said that the

rule should not be given as a "hit-or-miss" rule. While we agree with the statement, it will be seen that the learned judge also said:

"But if the plaintiff's negligence merely put him in the place of danger, *and stopped there, not actively continuing* (italics ours) until the moment of the accident, and the defendant either knew of his danger, or by the exercise of such diligence as the law imposes on him would have known it, then, if the plaintiff's negligence concurrently combined with defendant's negligence to produce the injury, the defendant's negligence is the proximate cause of the injury, and that of the plaintiff is the remote cause. This is all there is of the so-called doctrine of 'the last clear chance.'"

We believe this is a correct statement of the rule. Then, bearing in mind the rule that a person who finds himself in a perilous position is not required to exercise the soundest judgment (*Bunting* v. *C. P. R. R. Co.*, 14 Nev. 361; *Olson* v. *Erickson*, 53 Wash. 458, 102 Pac. 401; *Wheeler* v. *Oregon R. & N. Co.*, 16 Idaho, 375, 102 Pac. 355; *Colorado M. Ry. Co.* v. *Robbins*, 30 Colo. 449, 71 Pac. 371; *Mathews* v. *Daly West M. Co.*, 27 Utah, 193, 75 Pac. 722; *Hicks* v. *S. P. Co.*, 27 Utah, 526, 76 Pac. 627; *Linnehan* v. *Sampson*, 126 Mass. 506, 30 Am. Rep. 692; *Wright* v. *Boller*, 51 Hun, 636, 3 N. Y. Supp. 742, affirmed in 123 N. Y. 630, 25 N. E. 952; *Stoughton* v. *Manufacturers' Nat. Gas Co.*, 159 Pa. 64, 28 Atl. 227; *Kramm* v. *Stockton Elec. R. Co.*, 3 Cal. App. 606, 86 Pac. 741, 903; *Davis* v. *Chicago R. I. & P. Ry. Co.*, 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. n. s. 424; *The City of Boston*, 159 Fed. 266; *Springer* v. *St. Louis S. W. Ry. Co.*, 161 Fed. 801, 88 C. C. A. 619), did the court err in the instruction? While we cannot see that the plaintiff was necessarily negli-gent in turning down Sierra Street, yet, if he was, but as soon as he discovered the street car coming toward him at an excessive rate of speed exercised reasonably good judgment, situated as he was, in endeavoring to extricate himself from his dangerous position, his negligence must be said to have "stopped"; and having stopped and "not

actively continuing until the moment of the accident," and the defendant, either knowing of his danger, or by the exercise of such diligence as the law imposed upon it should have known of it, the proximate cause of the accident was the negligence of the defendant, and the last-clear-chance rule was applicable:

Mr. Chief Justice Baldwin, now governor of Connecticut, in *Smith* v. *Conn. Ry. & L. Co.*, 80 Conn. 268, 67 Atl. 888, 17 L. R. A. n. s. 708, states that:

"Negligence is only deemed contributory when it is a proximate cause of the injury. That only is a proximate cause of an event, juridically considered, which, in a natural sequence, unbroken by any new and intervening cause, produces that event, and without which that event would not have occurred. It must be an efficient act of causation separated from its effect by no other act of causation. If, after an act of omission constituting negligence on the part of one injured at a railroad crossing, the railroad car or cars might have been so controlled, by the exercise of reasonable care and prudence on the part of those in charge of them, as to avoid the injury, then a failure to exercise such care and prudence would be an intervening cause, and so the plaintiff's negligence no longer a proximate cause, and therefore not a bar to his recovery."

Supporting this rule are the following cases: *Neary* v. *Northern Pac. Ry. Co.*, 37 Mont. 461, 97 Pac. 948, 19 L. R. A. n. s. 446; *Nichols* v. *Chicago B. & Q. R. Co.*, 44 Colo. 501, 98 Pac. 814; *Anderson* v. *Great Northern Ry. Co.*, 15 Idaho, 551, 99 Pac. 98; *Swain* v. *Fourteenth St. Ry. Co.*, *supra; Philbin* v. *Denver City Tramway Co.*, *supra; Pilmer* v. *Boise Traction Co.*, 14 Idaho, 327, 94 Pac. 437, 15 L. R. A. n.s. 254, 125 Am. St. Rep. 161; *Nicol* v. *Oregon-Washington Ry. & N. Co.*, 71 Wash. 409, 128 Pac. 630, 43 L. R. A. n.s. 174, *Cerrano* v. *Portland Ry. L. & P. Co.*, 62 Or. 421, 126 Pac. 40; *Harlan* v. *St. Louis K. C. & N. R. Co.*, 65 Mo. 25; *Esrey* v. *S. P. Co.*, 103 Cal. 541, 37 Pac. 501; *Herrick* v. *Wash. W. P. Co.*, 75 Wash. 149, 134 Pac. 938, 48 L. R. A. n. s. 640; *Schmidt* v. *Mo. P. Ry. Co.*, 191 Mo. 215, 90 S. W. 136,

3 L. R. A. n. s. 205; *Sawyer* v. *Roanoke*, 145 N. C. 24, 58 S. E. 598, 22 L. R. A. n. s. 200; *Richmond P. & P. Co.* v. *Gordon*, 102 Va. 498, 46 S. E. 772.

[8-10] It is also contended that the trial court erred in giving instruction No. 13, for the further reason that it alludes to braking appliances, as there is no testimony in the case concerning the condition of the brakes. It is a general rule of law that it is error to give an instruction which is correct in law, but which is not based upon evidence (*White* v. *City of Trinidad*, 10 Colo. App. 327, 52 Pac. 216; *Spiking* v. *Con. Ry. & P. Co.*, 33 Utah, 313, 93 Pac. 844) ; but the objection and exception taken to the instruction at the time it was given do not point out that this portion of the instruction was not based upon any evidence. From a reading of the exception, it is apparent that counsel did not have this point in mind at all, but that his objection went only to the last-clear-chance phase. Nor does it appear that this point was urged as a ground' for a new trial, as is necessary before it can be considered by this court. (Rev. Laws, sec. 5328.) This court, in the case of *Paul* v. *Cragnaz*, 25 Nev. 325, 59 Pac. 857, 60 Pac. 983, 47 L. R. A. 540, which was a case in which several propositions were covered by the instruction, said:

"We think the rule is well established that in such case, if any portion excepted to is sound, the exception cannot be sustained. (*Morrill* v. *Palmer*, 68 Vt. 1, 33 Atl. 829, 33 L. R. A. 411, and cases cited.) 'Exceptions should be specific, and should be directed, not to the charge as a whole, but to the portion or portions thereof which are considered objectionable. It is only where the charge is erroneous in its whole scope and meaning, or where the charge, in effect, asserts but a single proposition, that a general exception will be available.' (8 Enc. Pl. & Pr. 257.) See citations given of many cases in twenty-five state courts, and numerous cases in the federal courts."

See, also, *Schollay* v. *Moffitt-West Drug Co.*, 17 Colo. App.126, 67 Pac. 182; *City of Denver* v. *Strobridge*, 19 Colo. App. 435, 75 Pac. 1076; *Hain* v. *Mattes*, 34 Colo. 345, 83 Pac. 127.

Since the instruction covered two points, and the objection and exception went to one of them only, and that the one not complained of here, the alleged error should not be considered by this court.

[11–13] It is also asserted that the trial court erred in giving instruction No. 13, in that a portion of it was in capital letters. This was not made a ground of objection and exception at the time it was given, nor was it specified as error in the memorandum of exceptions, and for that reason cannot be considered, as shown above. However, we may say, in passing, that the practice should not be indulged in.

[14] Instruction No. 14 simply informs the jury that the motorman was the servant of defendant company, and, if the accident was caused through his negligence, such negligence should be imputed to the defendant. This was not error. (*Hearn* v. *Wil. City Ry. Co.*, 1 Boyce, 271–277, 76 Atl. 629; *Little Rock Electric Co.* v. *Goerner*, 80 Ark. 168, 95 S.W. 1007, 1010, 7 L. R. A. n. s. 97, 10 Ann. Cas. 273.)

[15] It is insisted that prejudicial error was committed by the trial court in modifying a requested instruction by striking out with a pen a certain portion and leaving that portion in such a condition as to be easily read. While it is the better practice to have an instruction rewritten when modified, instead of running a pen through it, we cannot say that prejudicial error was committed in this instance.

[16] It is also contended that the court erred in modifying the instruction. The portion stricken out went to the rate of speed at which the street car was traveling after the accident. We think that the court did right in modifying the instruction by striking out the matter complained of. That which happens after an accident, when it throws no light on what preceded it, as in this case, is not a proper matter for instruction from the court, unless to instruct that it be disregarded.

Error is assigned to the refusal of the court to give certain other instructions requested on behalf of the

defendant, but we need not consider them, in view of the fact that what we have said disposes of them.

[17] It is contended that the trial court should have compelled the jury to make answer to two questions submitted calling for special findings, and that judgment should not have been entered upon the general verdict because of the failure to answer these questions. The questions and answers are:

"Q. No. 4. What, if anything, was there to prevent the plaintiff from passing to the left into Sierra Street from defendant's track after plaintiff first saw and knew of the approaching car? A. Cannot agree."

"Q. No. 7. Were there any vehicles or obstructions on the east side of Sierra Street between the points where the automobile was driven upon the track and the point of collision? A. Cannot agree."

Section 5222 of the Revised Laws of Nevada provides:

"* * * In all cases the court must upon the request in writing of any of the parties, direct the jury to find a special verdict in writing upon all or any of the issues. * * * Where a special finding of facts is inconsistent with the general verdict, the former controls the latter and the court must give judgment accordingly."

The evident purpose of this section is to enable the court to determine if a general verdict is due to an erroneous application of the law to the facts as actually found by the jury. Consequently, should a jury render a general verdict for a plaintiff, but find against him as to some fact which he has asserted, and should that finding be not "inconsistent" with the general verdict, and consequently not controlling, the court would, as is necessarily implied from the language of the statute, render judgment for the plaintiff on the general verdict. Then if a case should be submitted to a jury and it returns a general verdict for plaintiff, but as to the question of fact upon which a special finding is sought answers that it cannot agree, and the court refuses to grant a new trial and enters judgment on the general verdict, would such action by the court be reversible error, where, if there

were a finding in favor of defendant, it would not be so
"inconsistent" with the general verdict as to "control"?
We think not.

It was said in the case of *Schneider* v. *Chicago, B. &
N. R. Co.*, 42 Minn. 68, 43 N. W. 783:

"Where the jury find a general verdict in favor of the
plaintiff, but fail to agree upon a specific question sub-
mitted to them, the general verdict is properly received,
unless a finding in favor of the defendant on the specific
question submitted would be conclusive against plaintiff's
right to recover."

Supporting this rule are *Williams* v. *S. F. & N. W. R. R.
Co.*, 6 Cal. App. 715, 93 Pac. 123; *Pigeon* v. *W. P. Fuller
Co.*, 156 Cal. 691, 105 Pac. 976; *C. & N. W. R. Co.* v.
*Dunlevy*, 129 Ill. 132, 22 N. E. 15; *Wakefield* v. *Wakefield*,
182 Mass. 429, 65 N. E. 814.

If the theory we have advanced is sound, no substantial
rights of the defendant were violated by a refusal of the
court to compel the jury to answer the questions, assum-
ing that if the questions submitted were answered in
favor of defendant they would not be so "inconsistent"
with the general verdict as to control, and consequently
the case should not be reversed.   (Rev. Laws, sec. 5066;
*State* v. *Mircovich*, 35 Nev. 485, 130 Pac. 765.)

[18-19] Then, keeping in mind the idea that the
general verdict "controls" unless an answer to a special
question which is favorable to the defendant would be
"inconsistent" with the general verdict, we will look at the
situation and determine (as it must be presumed the trial
court did) if favorable answers to the defendant in the
case at bar would have justified the trial court in granting
defendant a new trial.   To enable us to arrive at a correct
conclusion on this point, we must remember that the
plaintiff proceeded in the trial court upon two theories:
(1) That he was not negligent in turning off of Elm
Street upon defendant's track, but that defendant was
negligent in operating its car at the high rate of speed it
did, and because thereof the accident ensued; and (2)
assuming that plaintiff was negligent in turning upon

defendant's track, nevertheless defendant had the last clear chance to avoid the accident and was negligent in failing to do so.

The jury found, in response to special questions, that when the plaintiff turned upon the street-car track the street car was "about 225 feet" from the plaintiff. It also found that the automobile went "about 25 feet" before it was struck. Counsel for plaintiff in his oral argument admitted that the evidence showed that "the speed of the street car was between 25 and 30 miles an hour." By actual calculation it will be seen that if the automobile and street car were exactly 225 feet apart, and the automobile traveled 25 feet, and the street car was going at the rate of 25 miles an hour, it took exactly 5.45 seconds for them to collide. Had plaintiff stopped his automobile instantly upon seeing the street car, it would have taken 6.16 seconds for the street car to strike the automobile. Now, if the jury found that the plaintiff was not negligent in turning upon the street-car track, and that the defendant was negligent in operating its car at the speed it did, and that the accident was the result thereof, the further question to be determined by the jury in arriving at a verdict upon plaintiff's first theory is—assuming that there was nothing to have prevented plaintiff from turning to the left—was he, situated as he was, guilty of negligence in not doing so?

Since it is a universal custom in the United States for persons in meeting while traveling in conveyances upon the streets and highways to turn to the right, the custom has become recognized as the "law of the road." (Elliott on Roads and Streets, 3d ed. sec. 1080.) While there are occasions when one would no doubt be guilty of negligence for not turning to the left, the custom of turning to the right is so universal that it becomes second nature to do so; we do it instinctively. Considering this, and that it was necessary for plaintiff to decide instantly, in view of the speed at which the street car was traveling, can it be said that, as a reasonably prudent man, plaintiff was negligent in turning to the right?

Fair-minded men might differ as to whether a person of ordinary prudence would have turned to the right as plaintiff did, and therefore it cannot be said as a matter of law that he was guilty of contributory negligence in doing so.　If the jury in considering this case and arriving at a verdict took, or might have taken, the view that plaintiff was not negligent in turning onto the street-car track, and that defendant was negligent in running its car at from twenty-five to thirty miles an hour, and that plaintiff, situated as he was, acted as a reasonably prudent man in turning to the right (in approaching the street car), notwithstanding the fact that he might have been able to turn to the left with safety, then answers in favor of appellant to the two questions submitted would not have been so "inconsistent" with the general verdict as to control, and therefore the refusal of the trial court to compel the jury to answer the questions was not prejudicial error.

Finding no prejudicial error in the record, the judgment is affirmed.